## W. W. TOTTEN & BRO. *v.* C. W. NANCE and others.

### October Term, 1877.

CHANCERY PRACTICE — SETTING ASIDE A PRO CONFESSO ORDER. — To justify the court in setting aside an order taking a bill for confessed in conformity with the law, there should be an affidavit of the party himself showing active diligence, the affidavit of the solicitor alone being, ordinarily, insufficient, and an answer showing, in unequivocal language, a meritorious defence.

*John Ruhm*, for complainants.
*W. G. Brien*, for defendants.

THE CHANCELLOR : — This bill was filed on May 31, 1876, to reach, under an order of the defendant Combs on the other defendants, in favor of the complainants, a certain amount of the indebtedness of the latter defendants to the drawer, which was admitted by all the defendants to be then due and owing. The defendants on whom the order was drawn, while admitting that they owed the drawer more than the amount of the order, refused to accept it, and the drawer himself refused to give the complainants the use of his name at law to enforce the liability. Under these circumstances, the complainants, after repeated applications for the acceptance or payment of the order during more than three months, were compelled to come into this court for relief. Process was duly executed upon the defendants, requiring them to appear and defend on the first Monday of October, and the law required them to make defence within the first three days of the present term, commencing on that day. Having failed to appear and defend within the time fixed by law and the rules of the court, the complainants took the bill for confessed, and had the same transferred to the trial-docket for final hearing.

On November 16, 1876, the defendants, by their solicitor, moved that the *pro confesso* be set aside, and that they have leave to file their answers accompanying the application. The motion is not supported by the affidavits of the defendants, or any one of them, showing the exercise of any diligence whatever to comply with the requirements of the law. The only affidavit offered is that of one of their solicitors, in which he states that he was employed in the month of September by the defendants, when three of our courts were in session, and when his partner had quit attending to any business of his profession, and thus threw more business on his hands than he could really attend to ; that, the defendants being numerous, and engaged in business at different places, it became necessary for them to make out a memorandum by which their answers could be

·drawn ; that they did make out such a memorandum, and left it at affiant's office, but it got mislaid ; that affiant then, "as soon as he could," saw the counsel for the complainants, to ask him not to take the bill for confessed, when the latter informed him that he had already taken the *pro confesso*. The affidavit then proceeds to account for the delay in not immediately applying to the court, by stating that the complainants' counsel told him to prepare the answers and submit them to him, and perhaps he would agree to set the *pro confesso* aside ; and that he did prepare and submit them accordingly, but the complainants refused to allow them to be filed.

The affidavit is defective in not stating when the application to the complainants' counsel was made, and, consequently, in not showing when the affiant woke up to active diligence. I am inclined to think the delay in the application to the court after that date is sufficiently accounted for. The complainants' counsel no doubt thought that, as the defendants had always admitted the existence of the indebtedness of the other defendants to the drawer of the order for more than the amount called for therein, their sworn answers would contain the same admissions. Finding himself mistaken in this, he has allowed his clients to determine for themselves their line of action.

Taking it for granted, then, that the application to the complainants' counsel was made shortly after the taking of the *pro confesso* order, the question presented to the court is whether the affidavit contains sufficient matter to have authorized the court, at that time, to have set aside the order. And I am compelled to say it does not. This court has, ordinarily, no right to interfere with the regular order of procedure fixed by law and its own rules, upon the affidavit of the solicitor alone. There must always be an affidavit of the client, if no cause exists why it could not be had, showing active diligence on his part, or a sufficient excuse, and that the default does not lay at his door. The

court is placed here to determine the rights of the litigants, and they, and not their solicitors, are the proper parties to make affidavits to influence its action; although the client may, in particular cases, take and use the affidavit of his solicitor, as he would that of any third person, to aid him in his motion, and supplementary to his own affidavit.

Moreover, the circumstances detailed in the affidavit, while they may appeal strongly to a brother lawyer to relax the strict rules of practice, are manifestly insufficient to justify similar action on the part of the court. If the sitting of other courts at the same time with this, and the press of business which may, by circumstances, be thrown on counsel, were a good excuse to clients for a failure to comply with the law and practice of this court, there would be an end of rules. An understanding that the litigant's rights, acquired under positive statutes or rules, must be set aside on such grounds, would, as I have once before had occasion to say, in the energetic language of the lord keeper, in *Windham* v. *Windham*, 2 Freem. Ch. 127, " blow up the court."

I come to this conclusion with the less regret, because I do not think that the answers disclose, unequivocally, a " meritorious defence." All the defendants admit that at the time, and after the order in controversy was given, and on the faith of which a litigation in this court was compromised, they believed, and so stated to the complainants, that the indebtedness covered by the order did actually exist. They now say that, on May 26, 1876, they had a settlement, " the result of which," to quote the language of Combs's answer, " showed him indebted to the company, instead of the company being indebted to him." The language of the answer of the other defendants runs thus: " On the 26th of May, when they cast up their accounts and had a settlement, they found that the company not only did not owe Combs, but that Combs was actually indebted to them, and is still in their debt." The indebted-

ness in controversy between Combs and the company originated in services rendered by the former for the latter, under, so far as appears, continuous employment in printing a religious paper. Both answers are cautiously worded, and leave it to be implied that at the settlement, on May 26th, the balance was not only found to be then in favor of the company, but was also in their favor when the order was given. They do not say so, however; and this is clearly a case for plain, and not unequivocal, language. It may be that, although the balance on May 26th was in favor of the company, it became so by items of account created after the date of the order and the promise to pay. To make out a meritorious defence, the answers should have stated unequivocally that the balance of accounts was in favor of the company when the order was given. The condition which the defendants propose in their answers to graft upon the written order, by parol, is clearly inadmissible.

The application must be refused.